IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO/CLC,

       Plaintiff,                                       OPINION and ORDER

       v.                                                24-cv-718-wmc

BILLERUD AMERICAS CORPORATION
and BILLERUD WISCONSIN LLC,

       Defendants.
_____

       Invoking the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and (c), plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW" or "the union") brought suit to compel arbitration of a 2021 grievance pending at the time of the 2022 acquisition of a paper mill, converting, and finishing facility in Wisconsin Rapids, Wisconsin, by defendants Billerud Wisconsin LLC and Billerud Americas Corporation (collectively "Billerud"). Specifically, USW contends that Billerud violated the parties' collective bargaining agreement ("CBA") by refusing to arbitrate a grievance concerning the contracting out of work previously done at the Wisconsin Rapids facility.

       Billerud moved to dismiss USW's amended complaint under Federal Rule of Civil Procedure 12(b)(6) on three grounds: (1) Billerud Americas is not a party to the CBA and does not have any other contractual obligation to arbitrate the USW grievance; (2) the claim is untimely under the LMRA, which has a six-month statute of limitations period; and (3) the

1

arbitration provision in the CBA between the USW and Billerud Wisconsin does not encompass USW's specific grievance. (Dkt. #26.) In addition, Billerud contends that the USW is not entitled to an award of fees or costs because Billerud's motion is not frivolous, nor has Billerud acted in bad faith. For the reasons below, the court will grant the motion as to Billerud Americas, which will be dismissed as a named defendant, but will deny the motion in all other respects. Oddly, USW has not affirmatively moved to compel arbitration, so the court will have to decide that question as part of the parties' summary judgment submissions.

ALLEGATIONS OF FACT[1]

A. The Parties' Relationship and Corporate History

Plaintiff USW is a labor organization and the exclusive bargaining representative of certain employees employed at a facility that converts rolls of graphic paper and cartonboard into sheets in Wisconsin Rapids, Wisconsin. Verso Minnesota Wisconsin LLC ("Verso Minnesota") operated this Wisconsin Rapids facility until it was acquired by Billerud Wisconsin on September 26, 2022.

---

[1] The following factual allegations are accepted as true for the purpose of the motion to dismiss as drawn from USW's amended complaint (dkt. #17) and from the contracts and grievance communications attached to and referenced within that complaint (dkt. #17-1 to #17-7). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Williamson v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013) (documents attached to complaint and referenced therein become part of the complaint and may be considered by the court in resolving a motion to dismiss). In addition, the court has taken judicial notice of public corporate records available online from the State of Wisconsin Department of Financial Institutions (dkt. #27-1 (accessed online at https://apps.dfi.wi.gov/apps/corpsearch/search.aspx)) and the State of Ohio Secretary of State (dkt. #27-2) (accessed online at https://businesssearch.ohiosos.gov/)), which Billerud submitted along with its motion to dismiss without objection by the USW. *See Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000) ("[D]istrict court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment.").

On March 1, 2019, USW entered into a joint labor agreement (or "CBA") with Verso Minnesota on behalf of its affiliated Locals Nos. 2-94 and 2-187. The CBA remained in effect until March 1, 2022, then was extended by mutual agreement to March 1, 2023. In addition, from March 11, 2019 to March 1, 2022, USW and Verso Corporation were parties to a Memorandum of Agreement (the "Master Agreement"), which modified the applicable CBAs at Verso facilities located in Wisconsin Rapids, Stevens Point, Escanaba, and Luke, respectively. After the expiration of the Master Agreement, Verso Corporation became Billerud Americas on September 26, 2022.

### B. The CBA and Master Agreement

Two sections of the CBA between USW and Billerud Wisconsin (formerly Verso Minnesota) are relevant to USW's claim.[2] *First*, § 21 defines the parameters under which Billerud may use outside contractors to perform work at the Wisconsin Rapids facility:

> [T]he Company has the right to enter into agreements with outside contractors to perform maintenance work that exceeds the scope and scale of work that Company maintenance crews are able to perform. Examples include; construction work, service work, non-core work such as yard work, crane inspections and related repairs, maintenance and repair of air compressors, maintenance and repair of HVAC equipment, and building and grounds work.
>
> \*   \*   \*
>
> [T]he Company will notify the Union of any such work to be contracted in advance of the work being performed, unless the work is deemed emergency in nature, and upon request of the

---

[2] Notably, Appendix A of the CBA regarding successorship provides that any buyer of the facility must recognize the union and *either* assume and apply the existing CBA *or* negotiate a new CBA. (*See* dkt. #17-2, at 49.)

3

> Union, demonstrate the business rationale of subcontracting said work.

(Dkt. #17-2, at § 21.)

*Second*, § 23 of the CBA allows the union to grieve alleged contractual violations and provides for binding arbitration:

> [T]he term 'grievance' means any dispute with the Company initiated by the employee and/or the Union concerning the effect, interpretation, application, claim of breach, or violation of this Agreement.
>
> \* \* \*
>
> Grievances are to be settled in the following steps:
>
> Step 1. Grievances shall be first discussed verbally between the employee and/or the Union representative with the employee's immediate supervisor. If the grievance is not resolved, then the grievance shall be reduced to writing by the Union and the answer reduced to writing by the supervisor. Grievances settled or resolved at the first step will be on a non-precedent-setting basis.
>
> Step 2. If the grievance is not satisfactorily settled, it will then be referred to the Mill Manager. The grievance will be taken up in conference with the Mill Manager or their designate, the supervisor whose direct action gave rise to the grievance, Union representatives, and an HR representative from the Human Resources Department. A written answer will be provided by the Mill Manager.
>
> Step 3. If the grievance is not satisfactorily settled it will then be referred in written form to the HR Manager. The grievance will be taken up in conference with the Local Union, the International Representative and the HR representative participating in Step 2.
>
> Step 4. If no settlement is reached, it may be referred to arbitration by the Union. A written request shall be made within 30 days for the Federal Mediation and Conciliation Service to submit the names of five qualified arbitrators, including personal history and arbitration experience of each.

> Upon receipt of such list of arbitrators, the parties shall meet, and upon failure to agree on the arbitrator, the parties shall alternately strike two names from the list. The person whose name remains on the list after four have been stricken shall be the arbitrator. The Federal Mediation and Conciliation Service shall be advised of the choice of the parties, and request that such arbitrator be assigned to the grievance.
>
> The arbitrator will render a decision to be final and binding upon both parties.

Soon after the execution of the CBA, USW and Verso Corporation entered into a Master Agreement to make certain modifications to the existing CBAs at Verso's facilities, including the Wisconsin Rapids facility. Section II of the Master Agreement provides that each local agreement (or CBA) shall incorporate various new or replacement language, including a management rights provision stating that: "Except as modified or restricted by this Agreement, all statutory and inherent managerial rights and functions are retained and vested exclusively in the Company." (Dkt. #17-1, at 4.) Relevant here is Section VII, which provides that each local agreement shall incorporate specific language regarding the use of outside contractors. That language was added to the CBA between USW and Verso Minnesota as § 21, which is quoted in relevant part above.

### C. The Grievance Negotiations

On May 12, 2021, USW filed Grievance No. 001-WR-94-2021 under the parties' CBA, alleging that Verso had contracted out work that could be performed in house. (*See* dkt. #17-3.) Verso's Human Resources Manager, Rachel Ruiter Bean, sent Local Union 2-94 President, Timothy Mitchell, a copy of Verso's written, first-step response to the grievance on May 27, 2021 (dkt. #17-4), and a copy of Verso's written, second-step response on August 10, 2021 (dkt. #17-5). Over two years later, and after Billerud acquired the Wisconsin Rapids facility,

5

Mill Manager, Brad Nurmela, sent Mitchell and Union Staff Representative, Denny Lauer, a written, third-step response to the grievance on October 9, 2023. (Dkt. #17-6.) In the three responses, Verso and then Billerud consistently maintained that it had been using both the Wisconsin Rapids facility and outside vendors to convert paper produced at the Escanaba and Quinnesec Mills, and nothing in the Master Agreement or CBA required that more converting work from other mills should be brought into the Wisconsin Rapids facility.

After the third-step response, the union advanced its grievance to arbitration via email on October 11, 2023 (dkt. #17-7), and the parties received notice of the assigned panel of arbitrators from the Federal Mediation and Conciliation Service for case no. 241023-00535 on October 23, 2023. On October 30, Union Staff Representative Lauer asked HSM Ruiter Bean when she was available to strike the panel, but she responded on November 2, 2023, that Billerud was reviewing the grievance and she would let Lauer know when they were ready to strike the panel. On November 16 and December 1, 2023, Lauer asked Ruiter Bean for an update on the status of the grievance. Ruiter Bean responded on December 5 that Billerud was not willing to strike the panel until Lauer spoke with Attorney Charles Welch. Lauer then told Ruiter Bean that a meeting with Welch was not necessary and asked her to let him know when Billerud was ready to strike the panel.

While Representative Lauer and Prsident Mitchell asked for subsequent updates on the status of the grievance, they did not hear back until a video conference held on April 17, 2024, when Billerud President Kevin Kuznicki told Lauer that Billerud would not arbitrate the grievance. On October 16, 2024, USW filed this lawsuit against defendant Billerud Americas, and then filed an amended complaint on January 8, 2025, adding defendant Billerud Wisconsin LLC.

6

OPINION

Billerud argues that USW's amended complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. At the pleading stage, however, the question is merely whether the factual allegations state a claim to relief that is plausible on its face if accepted as true. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). As noted, Billerud argues that USW's claim fails because: Billerud Americas is not a successor in interest to the CBA; the CBA does not encompass the underlying grievance; and this action is barred by the LMRA's statute of limitations period. The court addresses each of these arguments below in turn before addressing Billerud's additional argument that USW is not entitled to any fees or costs.

## I. Defendant Billerud Americas

Section 301 of the LMRA grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Specifically, the provision grants federal courts jurisdiction over controversies surrounding labor organizations and, by extension, the violation of collective bargaining agreements. *See Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 450-51 (1957). USW generally alleges in its amended complaint that the Billerud defendants "assumed all obligations and pending grievances under the Master Agreement and the CBA." (Dkt. #17, at ¶ 8.) However, Billerud Americas contends that it was never a party to the CBA between USW and Verso Minnesota, and unlike Billerud Wisconsin, never became a successor to Verso Minnesota.

Specifically, Billerud Americas has submitted corporate records showing that Verso Corporation became Billerud Americas, while Verso Minnesota became Billerud

7

Wisconsin. Moreover, it argues that Billerud Americas only became a party to the Master Agreement with USW, which does not contain an arbitration or grievance provision.

Curiously, USW failed to respond to this argument altogether or otherwise contest Billerud Americas' claim that it was not a successor in interest to Verso Minnesota, which amounts to formal waiver. *See Nichols v. Mich. City Plant Planning Dep't.*, 755 F.3d 594, 600 (7th Cir. 2014) (non-moving party waives any arguments not raised in its response); *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (plaintiffs' failure to offer any opposition to defendant's statute of limitations argument constituted waiver). Instead, both USW's amended complaint and response brief make clear that its action to compel arbitration is based solely on the arbitration clause in the CBA, apparently conceding its dispute is only with Billerud Wisconsin. (*See* dkt. #17, at ¶¶ 1, 13, and 29; dkt. #32, at 6.) Therefore, the court will dismiss Billerud Americas as a named defendant.

## II.   Statute of Limitations

Because the LMRA is a federal statute, this court must determine the appropriate statute of limitations, as well as the timeliness of the lawsuit. *See United Food & Com. Workers Loc. 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1346 (7th Cir. 1991) (federal courts determine the timeliness of a suit by reference to an appropriate statute of limitations); *Niro v. Fearn In"l, Inc.*, 827 F.2d 173, 177-78 (7th Cir. 1987) (noting how federal courts have applied statute of limitations for § 301 claims, which are "governed by federal substantive law"). While the LMRA does not contain a statute of limitations for § 301 actions to compel arbitration, the parties agree that the Court of Appeals for the Seventh Circuit has

held a six-month statute of limitations period in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies for lawsuits seeking to compel arbitration under a CBA. *United Food*, 950 F.2d at 1346-48. Moreover, there appears no dispute that this limitations period begins to run "when [a] plaintiff has a complete and present cause of action," *Chicago Bldg. Design, P.C. Mongolian House, Inc.*, 770 F.3d 610, 617 (7th Cir. 2014) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)), which in the context of a "suit to compel arbitration begins to run when the company makes clear to the union that it has made a *final* decision refusing to arbitrate," *Niro*, 827 F.2d at 177-78 (emphasis added) (citing decisions from other federal circuits holding the same); *see also McCreedy v. Loc. Union No. 971, UAW*, 809 F.2d 1232, 1237 (6th Cir. 1987) (cited with approval in *Niro*) ("A union's cause of action to compel arbitration arises when the employer takes an unequivocal position that it will not arbitrate.").

Billerud argues that the allegations in the amended complaint establish that USW failed to file this lawsuit within six months of when it knew or should have known that no arbitration would occur. *See Chicago Bldg.*, 770 F.3d at 613-14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)) ("[M]otion to dismiss based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'"). Specifically, Billerud contends that the union became aware that Billerud Wisconsin had no intention of arbitrating the grievance on December 5, 2023, when Ruiter Bean told Lauer that Billerud was not willing to strike the panel of arbitrators until Lauer spoke with Billerud's attorney. (*See* dkt. #17, at ¶ 24.) As USW points out, however, Billerud did not *unequivocally* refuse to arbitrate the grievance until April 17, 2024, when the parties met via video conference and Billerud first stated that it would not arbitrate the grievance.

9

While other contextual evidence, such as additional communications between the parties, *may* shed light on the factual question of when USW knew or should have known that Billerud had made a final decision to refuse to arbitrate, USW's allegation regarding Bean's December 5, 2023 statement, by itself, does *not* resolve this question. *See Chicago Bldg.*, 770 F.3d at 613-14 ("[T]he allegations of the complaint itself [must] set forth everything necessary to satisfy the [statute of limitations] affirmative defense."). Therefore, Billerud's motion to dismiss the amended complaint on this ground will be denied.

## III. Scope of Arbitration Clause

A court deciding a motion to compel arbitration of a labor dispute must first determine whether the dispute is governed by the arbitration clause on its face. *Int'l Bhd. of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014); *see also Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Loc. 5*, 724 F.3d 939, 944 (7th Cir. 2013) ("[W]hen a CBA provides for the submission of contractual disputes to an arbitrator, the court 'is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.'") (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)); *Loc. 232, Allied Indus. Workers of Am., AFL-CIO v. Briggs & Stratton Corp.*, 837 F.2d 782, 784 (7th Cir. 1988) ("Determining whether parties have agreed to submit a particular dispute to arbitration is a question to be decided by the judiciary, not the arbitrator."). "In doing so, we are mindful that both the law and public policy strongly favor arbitration, *see, e.g.*, 29 U.S.C. § 173(d); *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 378-79 (1974),

and that the party seeking arbitration is entitled to the benefit of the doubt." *NextEra*, 762 F.3d at 594. Thus, "[w]here the arbitration clause is broad, we presume arbitrability of disputes," and "where any ambiguity as to the scope of the clause exists, we will construe it in favor of the party seeking arbitration." *Id*. (internal citations omitted). In other words, the Seventh Circuit has directed that courts are to "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. (quoting *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008)).

Here, Billerud contends that it is not required to arbitrate a grievance filed by USW because the conduct alleged -- namely, the failure to bring work *into* the Wisconsin Rapids facility -- does not violate the terms of the parties' CBA. Specifically, Billerud maintains that § 21 of the CBA, which addresses the use of outside contractors, covers only those situations in which the company contracts work *out* of the Wisconsin Rapids facility and does not apply to work brought *into* that facility from other Verso/Billerud facilities. However, the arbitration provision in the parties' CBA broadly encompasses *any* dispute concerning the effect, interpretation, application, claim of breach, or violation of the CBA; it does not exclude any category of disputes. *See Sysco Indianapolis LLC v. Teamsters Loc. 135*, 120 F.4th 537, 543 (7th Cir. 2024) (quoting *NextEra*, 762 F.3d at 594) ("[T]his language is of [the] type that we have referred to, in the past, as broad enough to trigger the presumption of arbitrability.").

11

In this case, the parties' dispute concerns both the characterization of Verso's conduct *and* how § 21 of the CBA should be interpreted and applied. At this stage of the proceedings, USW's allegation that Billerud failed to arbitrate its grievance alleging that Verso had contracted out work that could be performed in house is sufficient *on its face* to state a claim for relief under the LMRA. However, given the factual disparity in the parties' positions and the application of the statute of limitations period, the court will not immediately compel arbitration, but instead allow the remaining parties to proceed with discovery.

## IV.  Fees and Costs

A party seeking to compel arbitration is entitled to attorneys' fees under § 301 of the LMRA when their opponent's defense was frivolous or brought in bad faith. *See Int'l Union of Operating Eng'rs, Loc. # 965 v. S. Crider Constr. & Supply*, No. 13-3425, 2014 WL 2609824 (C.D. Ill. June 11, 2014) (citing *Briggs & Stratton*, 837 F.2d at 789) (question of fees under § 301 resolved by court)). While Billerud points out that it prevailed on its non-frivolous argument that Billerud Americas does not have an obligation to arbitrate USW's grievance, Billerud Wisconsin's continued resistance to arbitration in light of the court's rulings today would then appear to be frivolous, if not in bad faith. However, as noted above, USW has not yet affirmatively moved to compel arbitration, so the question of an award of fees and costs to USW is premature. The court assumes that USW will affirmatively move to compel arbitration, and if that includes a request for fees and costs, both parties can address it at summary judgment.

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants Billerud Americas Corporation and Billerud Wisconsin LLC for failure to state a claim (dkt. #26) is GRANTED IN PART and DENIED IN PART:

1) Defendant Billerud Americas Corporation is DISMISSED from this lawsuit.

2) Defendants' motion is DENIED in all other respects.

Entered this 18th day of August, 2025.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge